| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br>1777 Sixth Street<br>PO Box 4249<br>Boulder, CO 80302<br>(303) 441-3750 | DATE FILED<br>April 28, 2025 4:02 PM<br>FILING ID: 838DB6596835E<br>CASE NUMBER: 2025CV30351 |
| ZOCALO CONSTRUCTION, LLC, a Colorado limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>FRANKENMUTH MUTUAL INSURANCE COMPANY, a Michigan corporation,<br><br>            Defendant. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiff Zocalo Construction, LLC:*<br>Ryan M. Sugden, Atty. Reg. No. 49499<br>Alex J. Gunning, Atty. Reg. No. 50323<br>**STINSON LLP**<br>1144 Fifteenth Street, Suite 2400<br>Denver, CO 80202<br>Phone: 303-376-8405<br>Fax: 303-578-7985<br>ryan.sugden@stinson.com<br>alex.gunning@stinson.com | Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff Zocalo Construction, LLC ("Plaintiff" or "Zocalo"), for its complaint against Defendant Frankenmuth Mutual Insurance Company, states and alleges as follows.

### INTRODUCTION

1.      This action is about a surety, Defendant Frankenmuth Mutual Insurance Company ("Frankenmuth") seeking to avoid its liability under performance and payment bonds. Plaintiff, acting as the general contractor and affiliated company of the developer and Owner ("Owner" of the bonds), contracted with a steel subcontractor, Steel Huggers, LLC ("Steel Huggers") to perform structural work as part of a large development project in Boulder known as Weathervane (the "Project"). As required by the subcontract, Steel Huggers executed performance and payment bonds with Frankenmuth acting as surety and naming Plaintiff as a third-party beneficiary, which

guaranteed Steel Huggers' performance. However, Steel Huggers ultimately failed to perform under the subcontract as a result of defective and incomplete work. Steel Huggers also misappropriated funds paid to it by Plaintiff and, ultimately, filed for bankruptcy while the Project was still ongoing. Despite issuing performance and payment bonds, Frankenmuth ignored and unreasonably delayed responding to Plaintiff's concerns about Steel Huggers' performance. As a result, Plaintiff was forced to replace Steel Huggers on the Project, and complete the work with a different subcontractor.

2.      After Plaintiff submitted a valid claim with complete documentary support, Frankenmuth delayed and/or denied Plaintiff's more than $600,000 claim based on Plaintiff's alleged failure to provide "reasonable notice" of Steel Huggers' termination from the Project. However, Plaintiff provided such notice on multiple occasions. Even more problematic, the "reasonable notice" contract term that Frankenmuth relied upon to delay and deny coverage comes from the wrong contract. The correct performance and payment bond contracts require Frankenmuth to show that it did not receive proper notice <u>and</u> show actual prejudice from the lack of notice. However, even after it was brought to Frankenmuth's attention that it was relying on the terms of the wrong contract, Frankenmuth continued to deny and/or delay Plaintiff's claim without a showing or explanation for how Frankenmuth was "actually prejudice[d]" by any alleged lack of notice. Frankenmuth continues to delay and deny Plaintiff's claim in breach of its contract and in bad faith.

3.      Pursuant to *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J*, 940 P.2d 348 (Colo. 1997), sureties can be held liable for a common law bad faith breach of a surety agreement. Additionally, pursuant to C.R.S. § 10-3-1102(2), the provisions of Colorado's Unfair Competition – Deceptive Practices Act apply to surety contracts. S*ee also Riccatone v. Colorado Choice Health Plans*, 315 P.3d 203, 210 (Colo. App. 2013) (holding C.R.S. § 10-3-1115 applies to parties who can be subject to common law bad faith breach of an insurance contract). Frankenmuth has unreasonably delayed and denied payment of a covered benefit without a reasonable basis. C.R.S. § 10-3-1115. Accordingly, Plaintiff is entitled to the amount of its covered benefit plus two times the covered benefit Frankenmuth has unreasonably delayed and denied along with Plaintiff's reasonable attorneys' fees and costs under C.R.S. § 10-3-1116.

## PARTIES

4.      Plaintiff Zocalo Construction, LLC is a Colorado limited liability company with its principal place of business at 455 Sherman Street, Suite 205, Denver, Colorado 80203.

5.      Defendant Frankenmuth Mutual Insurance Company is a Michigan corporation with its principal place of business at 1 Mutual Avenue, Frankenmuth, Michigan 48787.

2

## VENUE AND JURISDICTION

6. This Court has jurisdiction over the action pursuant to C.R.S. § 13-1-124(1)(d) because the causes of action arise from a contract to insure a risk located within this state at the time of contracting.

7. Venue is proper under Colo. R. Civ. P. 98(c) because the Performance Bond was to be performed in Boulder, County, the location of the Project.

## FACTUAL ALLEGATIONS

### The Project and the Default

8. Zocalo is the general contractor of a large commercial development known as Weathervane located in Boulder, Colorado (the "Project"). Zocalo, signed a contract with the property owner, developer and a syndicate of over 85 partners in the development of the Project, and was obligated to perform under said contract.

9. As part of the Project, Zocalo hired subcontractor Steel Huggers to perform the structural steel and other miscellaneous metal work in May 2022. The subcontract required Steel Huggers to complete the scope of work free of defects, in a workmanlike manner, and to pay all costs of performing the subcontract.

10. As a way to ensure Steel Huggers performance under the subcontract, Zocalo required Steel Huggers to obtain performance and payment bonds and name Zocalo as a third-party beneficiary.

11. Steel Huggers obtained performance and payment bonds, bond number SUR0003597, in the amount of $2,077,322 with Defendant Frankenmuth on May 12, 2022 for Zocalo's benefit (the "Performance Bond"). A true and correct copy of the same is attached as **Exhibit 1**.

12. During the Project, Steel Huggers repeatedly failed to comply with its subcontract by performing substandard and incomplete work, and being late in its performance, which posed significant risk of delay to Zocalo's contract requirements with the property owner.

13. Specifically, Steel Huggers failed to install roof ladders, mechanical screen posts, columns, canopy decking, retaining wall guardrails, and stair grab rails on multiple buildings in the Project before it abandoned its work.

14. Additionally, Steel Huggers column baseplate for building #7 failed inspection and required remediation, and its installed guardrails and grabrails for building #10 required repair.

3

15. Steel Huggers also billed for and was paid at least $167,173.46 for materials by Zocalo that never arrived on site, requiring Zocalo to pay others to procure, fabricate, and install replacement materials.

**Notice, Termination, and Lack of Communication**

16. On or around July 10, 2023, Zocalo called Kathleen Maloney, the director of surety claims at Frankenmuth, to notify Frankenmuth about Steel Huggers' deficient work and that Zocalo was considering declaring a default and terminating Steel Huggers' subcontract. After a conversation with Ms. Maloney, Steel Huggers' work did not improve.

17. On or around August 23, 2023, Zocalo again called Kathleen Maloney to notify Frankenmuth about Steel Huggers' ongoing deficient work and that Zocalo may pursue a default and termination of Steel Huggers' subcontract. Again, after that discussion with Ms. Maloney, Steel Huggers' work did not improve.

18. Furthermore, after a discussion with Zocalo, the insurance agent that wrote the bonds for Frankenmuth, Doug Rothey of Surescapes Insurance, wrote an email to Ford Rogers at Frankenmuth on October 6, 2023 declaring that Frankenmuth may have a liability to consider in Steel Huggers performance on Weathervane. Despite these early notifications demanding Frankenmuth take action, request a conference and demand Steel Huggers perform, Frankenmuth did nothing to investigate or mitigate the damages that would occur from Steel Huggers failure to perform.

19. With Steel Huggers still failing to comply with its contract performance, Zocalo sent Steel Huggers and Frankenmuth a "Notice to Effect Cure" on October 11, 2023 in which Zocalo demanded that Steel Huggers cure its deficient and incomplete performance or risk having its contract terminated. A true and accurate copy of the Notice to Effect Cure is attached hereto as **Exhibit 2**.

20. Steel Huggers failed to cure the deficiencies and incomplete work noted in the Notice to Effect Cure and, as a result, Zocalo terminated the Steel Huggers' subcontract on October 24, 2023. A true and accurate copy of the termination letter is attached as **Exhibit 3**.

21. Despite terminating Steel Huggers, Zocalo continued to work with Frankenmuth and Steel Huggers to get Steel Huggers' work on the Project completed.

22. Specifically, this included a phone conference with Steel Huggers and Frankenmuth on October 27, 2024 to discuss Steel Huggers performance and getting its work completed on the Project. As a follow up, Zocalo also sent a November 8, 2023 email to Steel Huggers and Frankenmuth, which provided a list of unfinished work and asked for estimated completion dates.

4

23. Zocalo never received a response from Steel Huggers or Frankenmuth regarding its November 8, 2023 email.

24. As a result, on November 13, 2023, Zocalo emailed Kathleen Maloney at Frankenmuth noting that there were no Steel Huggers' personnel on site and that Zocalo had not received a response from Steel Huggers regarding the incomplete work. Zocalo asked Frankenmuth for authorization to solicit other steel vendors to complete the work.

25. On November 15, 2023, Frankenmuth authorized Zocalo to obtain quotes on the items remaining for the Steel Huggers' subcontract.

26. Zocalo responded by sending multiple cost proposals and requests to proceed to Frankenmuth on November 13th, 15th, 22nd, 29th and December 5th and 13th, 2023.

27. On November 16, 2023, Frankenmuth emailed Zocalo to approve the costs for finishing some of the building 10 steel work, which was only one of the cost proposals.

28. Frankenmuth failed to respond to Zocalo's other cost proposals to finish other incomplete work for the still ongoing Project.

29. On or around November 20, 2023, Zocalo received notice that Steel Huggers filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Colorado, case no. 23-15295-TBM, and Zocalo advised Frankenmuth of the same.

30. On December 1, 2023, Ms. Maloney emailed Cory Wight at Zocalo advising that she was not aware of the Steel Huggers' bankruptcy, but mistakenly indicated that "it calls into the question Zocalo's ability to default [Steel Huggers] on the contract." Moreover, Ms. Maloney appeared not to understand Frankenmuth's obligations under the Performance Bond and stopped responding to Frankenmuth's claim inquiries. Ms. Maloney also indicated that Frankenmuth had retained counsel, Ed Rubacha, with respect to the bankruptcy issue.

31. On December 29, 2023, Zocalo emailed Kathleen Maloney regarding the claim status, but did not receive a response.

32. On February 9, 2024, Zocalo again emailed Kathleen Maloney requesting a status of the claim, but it received a bounce back email that Kathleen Maloney had left the company.

33. In response to the bounce back email, Zocalo sent an email to Joseph Ruch, Vice President at Frankenmuth, requesting a new contact for the claim, but Zocalo did not receive a response.

34. On February 13, 2024, Zocalo again emailed and left a voicemail for Joseph Ruch requesting a new contact on the claim but, again, Zocalo received no response.

5

Case No. 1:25-cv-01592-RMR-NRN   Document 4   filed 05/20/25   USDC Colorado   pg 6 of 11

35. Seven months elapsed and Zocalo received no communication from anyone at Frankenmuth.

36. During the time from October 2023 until Substantial Completion of the project in September 2024, Zocalo was under extreme pressure to cure delays caused by Steel Huggers' default. Specifically, Zocalo needed to prevent a loan default looming on October 1, 2024 by the Lender, which would have had catastrophic consequences to the property owner and Zocalo. As a result, Zocalo expended considerable time, resources and staff to finish Steel Huggers' work prior to the loan default deadline, with no cooperation or assistance from Frankenmuth.

37. On September 27, 2024, Zocalo attempted again to seek information regarding its claim by emailing Joseph Ruch and, this time, it also included Ed Rubacha. Zocalo was finally able to set a call with Mr. Rubacha on October 1, 2024.

**Improper Denial of the Claim**

38. Following the call with Mr. Rubacha, Zocalo issued a Notice of Surety Obligation to Frankenmuth on October 4, 2024 advising Frankenmuth of the costs incurred by Zocalo between November 13, 2023 and September 27, 2024 to complete Steel Huggers' work on the Project with replacement subcontractor Powdercoating & Welding Works, Inc. ("Powdercoating"). Zocalo previously notified Frankenmuth on October 31, 2023 that it may use Powdercoating to complete the steel work. The notice requested reimbursement in the amount of $629,667 and included supporting documentation. A true and accurate copy of the notice is attached as **Exhibit 4**.

39. On January 14, 2025, Zocalo sent Frankenmuth a letter advising that Zocalo still had not received payment and asserting that Frankenmuth was unreasonably delaying payment of the claim. A true and accurate copy of the letter is attached as **Exhibit 5**.

40. Frankenmuth responded to the letter on January 29, 2025 offering to pay a small portion of the claim as a full and final resolution of the entire claim (the "Declination Letter"). The Declination Letter purported to cite provisions of the Performance Bond that required Zocalo to provide "reasonable notice" to Frankenmuth of Steel Huggers' deficient performance prior to terminating Steel Huggers and retaining a replacement subcontractor. The letter effectively denied $516,664 of Zocalo's claim, while recognizing the validity of $113,004 of the claim. A true and correct copy of the letter and the improper contract relied upon by Frankenmuth are attached as **Exhibit 6**.

41. However, the "reasonable notice" provisions cited in Frankenmuth's Declination Letter are not from the Performance Bond. Instead, they are provisions taken from an unrelated and unexecuted contract and, as a result, do not govern. Moreover, the terms of the unexecuted contract, relied upon by Frankenmuth, also contain different terms. The terms relied upon by Frankenmuth in its Declination Letter are, as follows:

> (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;

6

42. However, the pertinent notice provisions of the executed Performance Bond provide, as follows:

> **§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after
>
> .1 the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;
>
> .2 the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and
>
> .3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.
>
> **§ 4** Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

**Ex. 1 at p. 2.**

43. The substantive difference between the two contracts is that the executed and controlling Performance Bond requires Frankenmuth to show that it did not receive adequate notice <u>and</u> that the lack of notice resulted in actual prejudice. The unexecuted contract does not mention a showing of prejudice.

44. Following the Declination Letter, Zocalo retained its own counsel and demanded full payment of its claim via letter on February 5, 2025. However, Frankenmuth continued to deny the claim based on an improper reliance on the unrelated and unexecuted bond contract.

45. On March 10, 2025, the fact that Frankenmuth was relying on the incorrect contract was brought to its attention.

46. On March 26, 2025, Frankenmuth's counsel admitted it had been relying on the wrong contract to deny Zocalo's claim.

47. Despite this, Frankenmuth continues to deny Zocalo's claim on the basis that it did not receive adequate notice without any explanation for how Frankenmuth was actually prejudiced by any alleged lack of notice.

48. Moreover, Zocalo complied with the notice requirements of the executed Performance Bond because Zocalo first notified Ms. Maloney at Frankenmuth on July 10, 2023 that Zocalo was considering a declaration of default of Steel Huggers. Between July and November 2023, Zocalo and the bonding insurance agent, Surescapes, engaged in numerous phone calls and

sent multiple emails to Frankenmuth to discuss and attempt to remedy Steel Huggers' performance. During this timeframe, Frankenmuth was not only not prejudiced, but also neglected or refused to take actions that could mitigate damages to Frankenmuth and Zocalo.

49. Given the above, Frankenmuth has engaged in conduct that is in violation of Colorado's Unfair Method of Competition – Unfair or Deceptive Practices Act, C.R.S. § 10-3-1104(h), in the following non-exhaustive ways:

  a. Misrepresenting pertinent insurance policy provisions relating to coverages at issue by relying on an unrelated and unexecuted bond contract.

  b. Failing to acknowledge and act reasonably promptly upon communications with respect to this Performance Bond claim by failing to respond to Zocalo after Zocalo repeatedly sought information on the claim in late 2023 and 2024.

  c. Refusing to pay claims without conducting a reasonable investigation based upon all available information by ignoring documentation and communications submitted to it by Zocalo that supports Zocalo's claim.

  d. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed by ignoring Zocalo's attempts to coordinate and communicate on the claim in late 2023 and throughout 2024.

  e. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of the claim in which liability has become reasonably clear by refusing to pay a valid and complete Performance Bond claim for a subcontractor that went into bankruptcy during the Project and yet the claim has been ongoing for over a year and a half;

  f. Compelling Zocalo to institute this litigation to recover amounts due under the Performance Bond by offering substantially less than the benefit that is reasonably owed to Zocalo.

## COUNT I
### (BREACH OF CONTRACT)

50. Zocalo incorporates all preceding paragraphs as if fully set forth herein.

51. The Performance Bond is a valid and enforceable contract that names Zocalo as a third-party beneficiary and guarantees Steel Huggers' performance under the subcontract.

8

52. Frankenmuth breached the Performance Bond by failing to pay Zocalo's complete and valid claim after Steel Huggers failed to substantially perform its scope of work.

53. Zocalo substantially performed its obligations under the Performance Bond.

54. Zocalo has suffered damages in an amount to be proven at trial as a result of Zocalo's breach, including the full value of its valid and complete claim.

## COUNT II
## (COMMON LAW BAD FAITH)

55. Zocalo incorporates all preceding paragraphs as if fully set forth herein.

56. Pursuant to the holding in *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J*, 940 P.2d 348 (Colo. 1997), Frankenmuth, as a surety, is subject to a common law bad faith breach of insurance contract claim.

57. Zocalo suffered losses when Frankenmuth failed to perform its obligations under the Performance Bond by failing to pay Zocalo's complete and valid claim, which was based on Steel Huggers' failure to substantially perform its scope of work on the Project.

58. Frankenmuth acted unreasonably when it failed to pay Zocalo's complete and valid claim under the Performance Bond.

59. Frankenmuth knew or recklessly disregarded that its delay and/or denial under the Performance Bond was unreasonable.

60. Frankenmuth's unreasonable conduct was a cause of Plaintiff's losses.

61. As a result, Plaintiff is entitled to recover the full value of its valid and complete claim, interest, costs, and reasonable attorneys' fees.

## COUNT III
## (STATUTORY CLAIM UNDER C.R.S. §§ 10-3-1115, 10-3-1116)

62. Zocalo incorporates all preceding paragraphs as if fully set forth herein.

63. Pursuant to C.R.S. § 10-3-1102(2), Frankenmuth, as a surety, is subject to Colorado's Unfair Competition – Deceptive Practices Act.

64. Despite being subject to the Act, Frankenmuth denied and/or delayed payment of covered benefits to Zocalo under the Performance Bond.

9

65. Specifically, Frankenmuth unreasonably delayed paying benefits to Zocalo by failing to respond to Zocalo's claim inquiries for months from the end of 2023 until September 2024, while the Project was ongoing.

66. Frankenmuth also unreasonably delayed paying benefits under *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501 (Colo. 2018) because, by Frankenmuth's own admission, $113,004 was reasonably owed to Zocalo in January 2025. Yet, Frankenmuth refused to tender this undisputed amount to Zocalo.

67. Frankenmuth also unreasonably denied paying benefits to Zocalo by relying on the terms of the wrong bond contract to deny Zocalo's claim, while at the same time failing to comply with the terms of the executed Performance Bond.

68. Thus, Frankenmuth's denial and/or delay of payment of covered benefits under the Performance Bond was without a reasonable basis.

69. As a result, Zocalo is entitled to its covered benefit, plus two times the covered benefit unreasonably delayed or denied, and its reasonable attorneys' fees and costs.

**WHEREFORE**, Zocalo respectfully requests the Court enter an order granting it the following relief:

A. Award monetary damages against Frankenmuth and in favor of Zocalo in an amount to be proven at trial.

B. Award Zocalo its reasonable attorneys' fees, costs, disbursements and other amounts.

C. Award pre- and post-judgment interest as allowed by law.

D. Award such other relief as the Court deems just and proper.

CORE/3532749.0004/198093965.1

**PLAINTIFF HEREBY DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 28th day of April, 2025.

                                **STINSON LLP**

                                *s/ Alex J. Gunning*
                                Ryan M. Sugden, Atty. Reg. No. 49499
                                Alex J. Gunning, Atty. Reg. No. 50323

                                *Attorneys for Plaintiff Zocalo Construction, LLC*

Plaintiff's Address:
455 Sherman Street, Suite 205
Denver, Colorado 80203

11